Case number 20-5183 et al. Lisa Guffey and Kristen Smith v. Roslynn R. Mauskopf in her official capacity as Director of the Administrative Office of the United States Courts Appellants. Mr. Shaw for the appellant, Mr. Michael Mann for the appellate. Mr. Shaw, good morning. Good morning. May it please the court, Waley Shaw for the AO. The revised AO code extends to AO employees the same restrictions on partisan clinical activity that have applied for a quarter of a century to their colleagues who work in federal courthouses. If we were in this court's courthouse today, every employee in the building would be subject to the same restrictions. In fact, the judicial clerks in the courtroom  activity that do not apply to the plaintiffs in this case. As far as I'm aware, those restrictions have never been challenged in court until now. And for good reason, dozens of judges have reviewed and signed off on the courthouse code in the course of drafting and amending it over the last 25 years. Those restrictions plainly address what the Supreme Court has said is a state interest of the highest order. By the same token, regulations not of the sort that govern our employees in the courthouse have been in existence governing the AO for decades, and no one has ever challenged them and no one has suggested they were inappropriate or that more was necessary. The underlying premise of your starting argument is that those of us who work in a courthouse can be easily compared with folks like the AO who do not work in a courthouse. That's an obviously questionable assumption, and the years and years of our history and how we've operated, I think, prove the point. Well, I would certainly agree, for example, that obviously staff in the AO are not performing the same roles as judicial clerks, but they are performing very roles than many other staff who work in federal courthouses. So, in terms of courthouses, there are obviously staff who are less high level, who have no direct connection to the adjudication of individual cases, yet those employees are nonetheless subject to all of the restrictions in the courthouse code. There's no exception for mailroom staff or IT support staff or anything of that nature, and I think for the same reasons that those employees are subject to the code, the AO should also be permitted to impose the same restrictions on its employees in the interest of protecting the impartiality of the judicial branch as a whole. And I would just, Mr. Shaw, I have a couple factual questions and some legal questions, and I'll start with the factual questions. I'm going to read a list of several statements, and then at the end I'm going to ask you if you think any of them are inaccurate as a factual matter. The plaintiffs in this case, Guffey and Smith, do not help judges adjudicate cases. Guffey and Smith do not provide substantive legal guidance to federal judges. Guffey and Smith do not make the final decision on court policy. Guffey and Smith do not make the final decision on even whether to publicly propose a new court policy. Guffey and Smith do not make the final decision on what to propose to Congress. Guffey and Smith do not make public statements on behalf of the judiciary. And finally, there's nothing in the record to suggest that anyone has ever used the private speech of employees with responsibilities like Guffey and Smith to attack the integrity of the judiciary. Those are a lot of propositions, and I'll just try to keep them straight. I mean, I think in the main, to the extent that you're suggesting that the plaintiffs in this case don't have ultimate decision-making authority on behalf of the judicial branch, I think that's correct. But I think it certainly is also the case that they do have interaction with federal judges. Their declarations make clear that they make recommendations to judges, to judicial conference committees on a variety of policy-making issues. Did Guffey and Smith specifically make those recommendations? Yes. So, for example, I think Plaintiff Smith's declaration says that two to three times a year she meets with judges to make recommendations regarding IT-related matters. And I think Plaintiff Guffey said something similar with respect to issues relating to that was incorrect. I think in the main, they are correct. I mean, I'm not sure about some of the details, for example. I don't know whether their advice ever includes any sort of legal aspect, for example. I think it's also correct that, you know, I'm not disputing that we don't have evidence of a particular past harm that has arisen based on the types of activities at issue here. But first, I don't think that's necessary. And what we do have is examples from other government agencies in which employees who are not senior decision makers do not have ultimate authority to make recommendations to Congress or anything of that nature. Their partisan political activities are actively being used to paint their employers as partisan and politicized and to attack the legitimacy of those institutions. I appreciate that, Mr. Shaw. Let me ask a legal question. Before you do that, Judge Walker, let me just follow up on your list of questions. Mr. Shaw, wouldn't all of those questions be answered the same way with respect to law clerks, with the exception of working side by side with a judge? Yes, I think that's correct. Certainly, law clerks also lack ultimate decision-making authority. And to the extent that they have any influence, it's only indirect through their interactions with federal judges, which many employees in the AO also have. All right, Judge Walker, go ahead. Thanks. So this question is about Supreme Court precedents. I want you to exclude cases that have overturned for the purposes of this question. Other than Williams-Yuley, when is the last time the Supreme Court allowed the government to adopt a domestic perspective, content-based ban on political speech? I have to admit, I haven't sort of canvassed the case law on this. I'm sure you have, counsel. You don't want to damn yourself. But I mean, certainly, I mean, we know that letter carriers is an example. And unfortunately, I just don't have another off the top of my head at this moment. And that's fair. I'm not sure I could find one more recent than letter carriers. Let me ask one hypothetical, and then I'll try to get out of my colleague's way while there's still some time. Judges sometimes get accused of allowing their religion to influence their decision-making, unfairly accused of that. And we saw that perhaps most famously with Justice Barrett's nomination to the Seventh Circuit. Do you think that the AO, under your reasoning, could prohibit AO employees from making public statements with regard to their religious beliefs, or even prohibit AO employees from going to church, synagogue, or mosque? No, I think that that obviously would not be permissible. And I think the reason is that we're talking about a balancing test, right? Certainly, we have a state interest of the highest order in protecting the impartiality of the judicial branch. But at the same time, we're balancing that against... In the balancing test, why is political speech less important than religious speech? Well, I think it's been recognized for over a century, at least, that in some cases, the partisan political activities of government employees may be restricted to protect the efficiency of the government service and to protect compelling government interests. So, I don't think that there's any... There's never been any suggestion that, for example, there could be... Someone could be prohibited from going to church to serve their same interests. I think that would be a far greater... Counsel, it's not really fair to say it is a balancing test, depending upon how you mean to use that word. You're trying to ride William Jouly, and the Supreme Court pronounced a very tough test there. They allowed a certain prohibition. The Court was very... The majority was very, very clear in saying, narrowly tailored to serve a compelling state interest. That's not a balance. The presumption is in favor of the speech. I don't think that the... It's a heavy burden to show exactly what the Supreme Court said was required. And if you read that case very carefully, despite how they came out on one issue, the court's test is tough. And that's why my colleagues started out with the question, have you found any other case other than... There hasn't been any. Well, I think the... I think it's incorrect to characterize the Williams-Jouly analytical framework as the one that governs in this case. I think both the plaintiffs and the government agree that actually the governing framework is NTEU. So it's not strict scrutiny. And what NTEU said is that the government must show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's necessary impact on the actual operation of the government. So I think that is the governing standard. Williams-Jouly applied a stricter standard because that case concerned the speech of a candidate for political office and not a government employee speech. So it did not... So to the extent that there was a heightened standard applied there, that doesn't govern. In this case, I just... I also just want to point out that I think what the district court and plaintiffs would like to do is they want to propose this lengthy chain of events that has to happen before... I'm sorry. I realize that I'm over my time. That's okay. Go ahead. Let me ask you a couple of questions that go off the record, I guess. First of all, I did a sort of informal survey of some of my colleagues, not my two colleagues today, and not one of us, and I include myself, had any idea that AO employees could engage in the type of political activity that was allowed before 2018. Now what concerns me is not so much the inter-branch, that does concern me, but the intra-branch. And what I haven't been able to answer is this. If I had known that all this political activity was allowed, how would it have affected, if at all, my relationship with AO employees? And I ask that, again going outside the record, but in the last, I'd say, less than a month, three Supreme Court justices have publicly warned against politicizing the judicial branch. And I've always believed that political activity is, of any kind, is toxic to the entire judicial branch. And I guess my question is this. The district judge said that no judge had, there was no evidence of any judge in the record or whatever. I don't know how we can, on the one hand, disabuse ourselves of our own personal knowledge and role in this question, I think we have to, but on the other hand, how we ignore it. I think that's entirely right. I think there is a significant risk. Judges must be impartial and nonpartisan by constitutional design. And in doing so, they have to be able to rely on having advice that they can count on as impartial and nonpartisan. And I would just point out that this is a very- Wait a minute. The existing regulations, things that are in place, prohibit AO employees from engaging in nonpartisan activity in their work. Right. That's right. But you can't ignore that. And that explains the past 40 years. The AO employees are responsible professionals. They have been over the past 40 or whatever decades it's been. They have been prohibited from putting partisanship in their work. They have followed that regulation and therefore we have never been adversely affected by it. It never crossed my mind that the politics of an AO employee would somehow adversely affect me because my interactions with them about business, they know do not involve politics. And I trust that. And it's never been an issue. Never. Well, Judge Edwards, I would also point out that actually the prior AO code actually included restrictions on partisan political activity. It actually included six of the nine restrictions that are challenged here. Although there were some minor differences, for example, some of them only applied to elections at the federal level, but not at the state level. So the fact that you have not perceived partisan political activity may be in part due to these restrictions. And I also wanted to point out that the very reason the AO exists is that many of the functions that the AO now performs once performed by the executive branch, it was perceived that that was unacceptable because it created an unacceptable risk of having partisan political influence on the judiciary. And that's exactly why these functions were moved to the AO so that they could be performed in a biased and impartial, but also perceived to be such. And I don't think it's, you know, we explained in our briefs that it's, you know, we certainly believe in the professionalism of AO employees. Nonetheless, it is only human nature that if a judge receives advice on a politically charged topic and is aware that the employee giving that advice has indicated a strong that the judge will not at least question. They are prohibited from pursuing political activities in their work. How am I going to know the politics of an AO employee? They're going to send me a postcard? I don't understand what you're talking about. I really don't. They are prohibited in their work from engaging in partisan activity, always have been. Well, I think we discussed a number of ways that this might happen in our brief. So for example, they're all unconvincing to me, given my 40 plus years of history in interacting. I don't see it. It's bogus. I mean, I've dealt with contractors who served the judiciary, who come in when I was chief judge, who were very important decisions to be made. I didn't know what their politics were and it never crossed my mind that we could in any way limit their political activities. And yet, their politics may or may not have been in their mind when they were interacting with me as chief judge. It just seems to me a bogus issue and history has proven it and you haven't been able to suggest other than a couple of things that the district court found. Let me ask you a question, Judge Edwards, and that is you're savvy about social media. I'm not. But what if you were to see some blatantly political back and forth between AO employees and other members of the public or whatever? If it's outside of their work context, my feeling is that's not my business. If it has to do with their work, that's an entirely different question. All right. Well, let's hear from Mr. Michaelman. Thank you, Judge Henderson. Scott Michaelman of the ACLU of the District of Columbia for plaintiffs Guffey and Smith. May it please the court. The government has banned 1,100 employees from nine core political activities without meeting its heavy burden to justify an ex-ante speech restriction. Under the code... What do you want us to apply? Excuse me, Judge Edwards. Do you want us to apply? NTEU, Judge Edwards. There needs to be the balancing, as Mr. Shaw said, we agree on this, a balancing of the interests of both potential audiences and the vast group of present and future employees in the broad range of their present and future expression must be outweighed by the necessary impact on the actual operation of the government. And I think all those words are important because... Are you challenging the aspects of the code that have changed only? No, Judge Walker. There are a few aspects of the code that have been broadened, as Mr. Shaw noted, where there was a restriction in part, and now there's a broader restriction. We think the whole restriction as to political activities with both federal and state level are problematic because these are just such core aspects of Judge Edwards' questions that on the grounds of the AO's building, and I would suggest even the parking lot of the AO, that there's no place for political bumper stickers, political buttons, political speech. Absolutely. And I think, Judge Walker, that shows why the AO's new code is not appropriately tailored. And that is an exception to the code. The AO's new code is not even accepting the government's interests. They have plenty of alternative means that they've already put into place either in this code or in the prior code. Do you have a sense, and maybe Mr. Shaw will know on rebuttal if you're not sure, what's the rule for soldiers when they're off base, off duty, and out of the uniform? Do you know if they're allowed to express political opinions? I don't, Judge Walker. But I will say that we already have- But we know they can't when they're on duty, on the job. I would be astonished if they could, Judge Henderson. And I think similar prohibitions already have been in effect either in the current code that we have in challenge for the AO, or in the prior code banning the conduct of political activities on duty with government resources or while identifying as AO employees. That was all in the 2016 code at JA 84. Let me ask you that also under the, as I read that chart in the record, under the old code for the AO employees, they weren't supposed to get on social media for national offices. And yet these two declarations say they want to be able to continue to do that. Now, they didn't specify the time period in which they use social media, but one of them's a 10-year employee, and it seems apparent that she was using social media even under the old code. I'm not sure at all that that's clear from the declaration. Or she said she wants to continue to do these things, including social media, which she wasn't allowed to do with respect to national offices ever under the old code. Right. Well, she had only worked for the AO since 2010, so that was a period of eight years, so she could resume, as could Plaintiff Smith, her prior practice. I think to the extent there's any suggestion that AO employees weren't aware of and were using social media when the code prohibited it, that only further shows how innocuous this private, off-duty, core political speech was to the functioning of the AO. I think it's also important to recognize, to highlight something that Judge Walker posited about the breadth of the government's authority that it's claiming here. Judge Walker mentioned church attendance. I think we could think about religious expression. Under the rationale that certain types of political speech will undermine the perception of the judiciary as an impartial institution, you could imagine the AO saying, well, we don't want expressions of religious devotion. We don't want ichthys fish bumper stickers on our employees' cars, because then they're going to think that the judiciary has a religious agenda and people are going to question decisions in everything from COVID restrictions to abortion. I don't think there's any difference in terms of either the level of protection, these are core First Amendment rights, or the government's open-ended thought that the least informed people among us could misunderstand and believe that one AO's private expression of speech of a number of kinds could somehow undermine the impartiality of the road when we permit so much speech to be restricted based on so little evidence. As Judge Edwards noted, there is no history of problems for the 80 years of the AO's existence, including for the last three, during which this injunction was in place and we had the election of 2020, which was incredibly contentious, fought hard on social media in a very partisan climate, and yet the government, with every incentive to identify trouble, does not point to any instances, to come back to one of Judge Walker's questions, in which the private speech of an AO employee was used as a basis to undermine the confidence in the judiciary. Just let me just say, just wait, because we have all seen how social media has polluted this entire country, and if there's one segment that ought to be in this, particularly in this city, which is such a hotbed of politics, if there's one segment that ought to be, appear to be, apolitical, it is the judiciary. I mean, Judge Walker mentioned the military. The military is apolitical because its business is war. We should be apolitical because our We don't have the jurisdiction to answer it. For what it's worth, I scoured the internet for regulations, and apparently military are not prohibited from engaging in political activities off-duty. I don't know what the breadth of that is, but that there seems to be a division there. Off-duty, it's different from on-duty. On-duty, they're absolutely prohibited. So, for what it's worth. Which I think underscores the anomalous nature of this prohibition, which goes beyond what is banned for even the most restricted employees under the Hatch Act. And of course, Judge Henderson, we agree that the judiciary should be apolitical, but I think the question is whether the off-duty private political speech, ordinary political speech that many, many, many Americans engage in, will give the impression, the mistaken impression, that even the government doesn't think is a correct impression, that the AO professionals are not checking politics at the door, and instead, using what they do outside of the office to color their work inside the office, and we have no evidence that that's happening. How do you deal with the other side's argument that you can't really, they are saying, you can't really distinguish those of us who are in the courthouse, including, for example, law clerks. My law clerks know that they are prohibited from engaging in political activities during the term of their work with me on the court, and I think for good reasons, including using social media and the whole bit, because people can be confused about how to connect that to me. Well, how do you distinguish, or can you distinguish the two groups of workers in terms of regulations? Two answers, Judge Edwards. First, with respect to the specific question you asked about clerks, and I was a clerk once upon a time, too, and remember the restriction as well, clerks are just much, much, much, much closer to the business of adjudicating cases in what, in terms of what they assist judges with than AO employees, and as Williams-Uley makes clear, the special impartiality of judges, the special interest in that is about the adjudication of cases. There's a fear that the person who signs the fundraising letter is also the person who will one day sign the judgment. It's very specific to that interest. More broadly, I think the problem for the government with the analogy of the courthouse code, and this is my second point, is that they just haven't made a record on the entire range of functions for courthouse employees versus AO employees. They haven't shown which ones are comparable and which to the least visible, least influential members of court staff. That's really an unformed analogy. There's just not enough there for the court to make a meaningful comparison, particularly when it's the government's burden that the court in Janice referred to as close to exacting scrutiny, to me, to justify this code. I see that I'm out of time, but if I could just address the cross-appeal, two issues, with the court's permission. Sure. Go ahead. Go ahead. Thank you, Your Honor. On the driving and organizing restrictions, I think it's notable that Mr. Shaw has not attempted to distinguish them in any way, and neither did Director Duff in his declaration. We think those should fall with the rest, and we also think the government's, excuse me, the district court's excellent analysis of the seven it struck down ran into some trouble on the driving and organizing restrictions because of an incorrect, an error of law, an incorrect reading of the Hatch Act, as well as a failure to apply the same skepticism and scrutiny to the government's assumptions as it did in the other seven. For instance, just to take one example, and then I'll wrap up if the court has no questions, the notion that a person who is recognized as doing that and known to be an AO employee and that an observer would conjure up the image of this person going into the Thurgood Marshall building the next day and wrecking havoc with the judiciary's impartiality is hard to believe when the person who is driving may not be seen, may not be recognized, may be driving friends, may be driving family, may be driving on behalf of a nonpartisan voter assistance organization, which would be permitted. So I just think the district court's logic on these two does not hold up, and notably neither the government nor anything it's put into the record had suggested the driving and organizing restrictions are somehow especially important or those activities are especially bad such that they should be upheld when the other seven fall. And so in sum, I would urge the court to remember the burden, the strict burden under NTEU, the huge swath of ordinary political activity that the AO seeks to ban and recall that the government has no actual examples of harm coming from the sort of Well, let me just say I think you need to reread Director Duff's declaration. I find I found it compelling. But anyway, let's hear from Mr. Shaw. Why don't you take two minutes? Thank you very much. I'd like to begin where my colleague left off with the cross appeal. The two restrictions that were affirmed by the district court are also present in the Hatch Act, and those restrictions were upheld as to all federal government employees by the Supreme Court twice in Mitchell and then again in letter carriers. And since then, the Supreme Court has never suggested that there's any that that any of its later holdings have called those called NTEU itself. The Supreme Court cited the Hatch Act with approval. It said that Congress effectively designed the Hatch Act to combat demonstrated ill effects of government employees, partisan political activities. And we cite a host of circuit court precedent in our in our brief in recent years, continuing to affirm the validity of letter carriers in Mitchell. So I think it's unquestioned that though that the Hatch Act is still valid, those restrictions in the Hatch Act are still valid. And if those restrictions are still valid with respect to executive branch employees, they certainly have all the more force for employees of the judicial branch. I also wanted to point out that I don't want I don't want to take away the time for your last point. So please, that's fine. Please go ahead. I have a question about remedy, Mr. Shaw. If we disagree with you about the merits with regard to Guffey and Smith, can you can you give me an argument for why we should only enjoin this policy with regard to Guffey and Smith, and not beyond the two plaintiffs? Yes, absolutely. And I think we fully fleshed that out in our district court summary judgment brief. I probably don't have the time to recap that now. But we do that. That was our position in the district court. We have not renewed that argument on appeal. But certainly, if this court thinks it appropriate, we think that it would be appropriate to confine the injunction to the two plaintiffs. You keep saying the Hatch Act applies to all federal employees. That's not correct, is it? Yes, you're absolutely right. And I'm sorry, I did not have time to clarify that the Hatch Act at the time it was upheld did apply to all federal government employees. Now, some of those restrictions only apply to a certain category of further restricted employees. So those include employees of agencies like the FEC, the FBI, the CIA. And yet, nonetheless, there's been no question. There's not been any suggestion that those further restrictions are unconstitutional as applied to those agencies. And I think the constitutional design must be impartial and perceived as impartial has an even stronger claim to need for those kinds of restrictions than the agencies that I just said were further restricted. All right. If there are no more questions. Thank you, gentlemen. Madam Clerk, if you'd call the next case.
judges: Henderson, Walker, Edwards